IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE MENTOR CORP. OBTAPE | * | MDL Docket No. 2004 |
| | | 4:08-MD-2004 (CDL) |
| TRANSOBTURATOR SLING PRODUCTS | * | |
| | | Case Nos. |
| LIABILITY LITIGATION | * | 4:10-cv-5060 (C. Cline) |
| | | 4:11-cv-5065 (I. Morey) |
| _____ | * | |

O R D E R

The summary judgment motions of Defendant Mentor Worldwide LLC ("Mentor") as to the actions filed by Plaintiffs Carol Cline ("Cline") and Irene Morey ("Morey") (collectively, "Plaintiffs") present choice of law issues that are dispositive of the pending motions. Both of these product liability actions were originally filed in the United States District Court for the District of Minnesota before being transferred to this Court for pretrial proceedings by the Judicial Panel on Multidistrict Litigation. In both cases, Plaintiffs, who were surgically implanted with Mentor's suburetheral stress urinary incontinence sling product, ObTape Transobturator Tape ("ObTape"), allege that ObTape was defectively designed and/or manufactured, that it proximately caused their injuries, and that Mentor did not adequately warn their physicians about the risks associated with ObTape. Plaintiffs contend that Mentor has a strong connection to Minnesota and that Minnesota law applies to their claims.

Mentor seeks summary judgment on the issue of which state's law is applicable to each Plaintiff's claims. Mentor argues that Ohio substantive law governs Cline's claims because she is an Ohio resident who was implanted with ObTape and had all relevant medical treatment in Ohio. Mentor contends that if the Court grants Mentor's summary judgment motion on the choice of law issue, then Cline's action should be dismissed without prejudice because she failed to reference the Ohio Product Liability Act in her Complaint.

Mentor maintains that Washington law applies to Morey's claims because that is where she was implanted with ObTape and where she received treatments related to the alleged failure of the product. Mentor contends that if the Court applies Washington substantive law to Morey's claims, then it must also apply Washington's statute of limitations, which would bar Morey's claims.

For the reasons set forth below, the Court finds that Minnesota law applies to the claims of Cline and Morey. Therefore, Mentor's Motion for Summary Judgment against Cline (ECF No. 58 in 4:10-cv-5060) is denied, as is Mentor's Motion for Summary Judgment against Morey (ECF No. 51 in 4:11-cv-5065). In addition, Morey's Motion to Amend (ECF No. 36 in 4:11-cv-5065) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

DISCUSSION

The Judicial Panel on Multidistrict Litigation transferred Plaintiffs' diversity actions from the United States District Court for the District of Minnesota to this Court for pretrial proceedings. Therefore, the Court must apply the choice-of-law rules of Minnesota, the transferor forum, to determine which state law controls. *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 911 (8th Cir. 2004); *accord Murphy v. Fed. Deposit Ins. Corp.*, 208 F.3d 959, 965 (11th Cir. 2000) ("Our system contemplates differences between different states' laws; thus a multidistrict judge asked to apply

3

divergent state positions on a point of law would face a coherent, if sometimes difficult, task.") (internal quotation marks omitted).

Under Minnesota law, the Court must first determine whether there is an actual conflict "between the laws of [the] two forums." *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 93-94 (Minn. 2000).  If there is no actual conflict regarding substantive law or if the law at issue is procedural, then the Court may apply Minnesota law. *Christian v. Birch*, 763 N.W.2d 50, 58 (Minn. Ct. App. 2009).  If there is an actual conflict, then the Court must determine "whether the law of both states can be constitutionally applied." *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469-70 (Minn. 1994).  Finally, if there is an actual conflict but no constitutional impediment exists for the application of either state's law, the Court must apply the "significant contacts test," which consists of five "choice-influencing factors." *Nodak Mut. Ins. Co.*, 604 N.W.2d at 94.  At this stage of the proceedings, the facts are viewed in the light most favorable to the Plaintiffs.

## I.   Mentor's Connection to Minnesota

Mentor distributed ObTape in the United States between 2003 and 2006.  Pl.' Cline's Statement of Additional Facts Relevant to Mentor's Mot. for Summ. J. Attach. 8, Wyatt Decl. ¶ 41, ECF No. 59-8 in 4:10-cv-5060.   It is undisputed that "Mentor

Corporation" was incorporated in Minnesota from 1969 to 2009. It is also undisputed that, "for regulatory purposes, Mentor Minnesota was the designated manufacturer and distributor of ObTape and ObTape introducer needles." Def.'s Resp. to Pl. Morey's Statement of Additional Facts Relevant to Mentor's Mot. for Summ. J. ¶ 17, ECF No. 59-2 in 4:11-cv-5065. Mentor's 2003 510(k) Premarket Notification submission to the Food and Drug Administration lists "Mentor Minneapolis" as the "Manufacturer" of ObTape with an address in Minneapolis, Minnesota. Pl. Cline's Statement of Additional Facts Relevant to Mentor's Mot. for Summ. J. Attach. 7, 510(k) Premarket Notification at MENTOR/OBTAPE CONFIDENTIAL_058373, ECF No. 59-7 in 4:10-cv-5060. The 510(k) also lists Analytic Biosurgical Solutions (ABISS) in France as the "Contract Manufacturer." *Id.*

It is undisputed that Mentor's Minnesota employees were responsible for assuring that ObTape conformed to specifications. Specifically, a quality inspection manager at "Mentor Minnesota" reviewed certificates of conformity provided by the contract manufacturer and made sure that "[n]o ObTape was shipped unless [it] was accompanied by a certificate of conformity. Wyatt Decl. ¶¶ 17-19. It is further undisputed that Mentor's product evaluation department was in Minnesota and was responsible for investigating complaints associated with ObTape, making adverse consequences reports to the United States

Food and Drug Administration ("FDA"), and training sales representatives regarding adverse events.  Mentor's 510(k) for ObTape states that any complications from the use of ObTape should be reported to Mentor's quality assurance department in Minneapolis, Minnesota and that Mentor would analyze any explanted devices.  510(k) Premarket Notification at MENTOR/OBTAPE CONFIDENTIAL_058409 to 058410.  Mentor admits that complications associated with ObTape that were known to Mentor were subject to internal investigations at Mentor's facilities in Minnesota.  Mentor contends that investigation of issues related to ObTape was not limited to Mentor's Minnesota location, but Mentor did not point to any evidence in support of this contention.

Mentor asserts that "Mentor Corporation" merged into "Mentor Worldwide LLC" in 2009 and is now a citizen of New Jersey.  Def.'s Resp. to Pl. Cline's Statement of Additional Facts Relevant to Def.'s Mot. for Summ. J. ¶ 1, ECF No. 63-3.

## II. Cline's Action

Cline is a resident of the State of Ohio.  All medical treatment related to Cline's claims occurred in Ohio.  Cline experienced symptoms of urinary incontinence and was referred to a urologist in 2004.  The urologist implanted Cline with ObTape in November 2004.  In April 2006, Cline returned to the urologist because she was experiencing pain, bleeding, and

discharge.   The urologist conducted an examination and found an erosion of the ObTape.  He removed the exposed portion of ObTape and sent it to pathology.

Cline filed her action in the United States District Court for the District of Minnesota on September 24, 2010.   Cline asserts claims for strict liability, negligence, breach of warranty, failure to warn, and punitive damages.   Cline contends that Mentor "was negligent in designing, manufacturing, marketing, labeling, packaging, and selling the Ob[]Tape and in failing to warn [Cline] of the defective nature of its product." Cline Compl. ¶ 15, ECF No. 1 in 4:10-cv-5060.

## III. Morey's Action

Morey is a resident of the State of Washington.   All medical treatment related to Morey's claims occurred in Washington.   In 2003, Morey consulted her urologist, Dr. Kathleen Kobashi, regarding bladder prolapse, urge incontinence, and stress urinary incontinence.   Dr. Kobashi implanted Morey with ObTape on December 29, 2004.  Following the surgery, Morey suffered from several complications, including discharge, vaginitis, and extrusion of the ObTape.  On June 14, 2005, Morey was examined by Dr. Fred Govier, who told Morey that she had an erosion and that he needed to remove as much of the ObTape as possible.   Dr. Govier told Morey that the problems she had experienced were because of her sling.   Dr. Govier also told

Morey that he and Dr. Kobashi had stopped using ObTape by that point.   Neither Dr. Govier nor Dr. Kobashi specifically told Morey that they believed ObTape was defective.   Morey contends that she first learned that her sling might be defective in 2011, when her son-in-law saw something on television regarding sling products.   Morey Decl. ¶ 8, ECF No. 55 in 4:11-cv-5065.

Morey filed her action in the United States District Court for the District of Minnesota on May 11, 2011.   Morey's Complaint asserts a claim for negligence.   She contends that Mentor "failed to exercise ordinary and reasonable care in designing, manufacturing, testing, marketing, labeling, packaging, selling and/or distributing the Mentor ObTape vaginal sling [and] negligently failed to provide adequate warnings and instructions to [Morey] and to her physicians regarding the Mentor ObTape vaginal sling."   Morey Compl. ¶ 23, ECF No. 1 in 4:11-cv-5065.   Morey also contends that Mentor was negligent "by failing to promptly and adequately notify [Morey, her] doctors, the medical community, and the public at the earliest possible date of known defects in the Mentor ObTape vaginal sling."   *Id.* ¶ 24.   Morey also seeks to add a claim for punitive damages. *See* Pl. Morey's Mot. to Amend, ECF No. 36 in 4:11-cv-5065.

**IV.  Application of Minnesota Choice of Law Principles**

A.  Is There an Actual Conflict Between Minnesota Law and the Law of Ohio and Washington?

An actual conflict of law "exists if the choice of one forum's law over the other will determine the outcome of the case." *Nodak Mut. Ins. Co.*, 604 N.W.2d at 94.  Regarding Cline's claims, it is undisputed that Minnesota permits common law product liability claims, while product liability claims in Ohio are governed by the Ohio Product Liability Act ("OPLA"), Ohio Rev. Code Ann. §§ 2307.71-2307.80.  The OPLA was "intended to abrogate all common law product liability claims or causes of action."  Ohio Rev. Code Ann. § 2307.71(B).

Although Cline and Mentor appear to agree that an actual conflict exists between Ohio law and Minnesota law, the Court is skeptical as to whether this difference is outcome determinative as contemplated by Minnesota's choice of law rules.  It is undisputed that Minnesota permits common law product liability claims couched in terms of strict liability and negligence, while Ohio has abrogated such claims, replacing them with a statutory cause of action for product liability.  It is unclear, however, that the differences in these types of causes of action would make any difference in the outcome of this lawsuit.  Neither party pointed to any outcome determinative differences between the product liability law in Minnesota and Ohio.  As the

Court understands Minnesota choice of law principles, mere differences in the law are not sufficient to authorize the application of the law from the non-forum state. Those differences must affect the outcome. The present record does not demonstrate how Cline's proof and Mentor's defenses would be different, as a practical matter, if Cline's claims are pursued under Minnesota's common law product liability principles instead of under Ohio's product liability statute. Although the Court doubts that any practical outcome determinative difference has been demonstrated by the present record, the Court nevertheless assumes for purposes of the remainder of this Order that such a difference does exist given the fact that Cline has made no effort to contest that assumption.

Regarding Morey's action, product liability claims in Washington are governed by the Washington Product Liability Act ("WPLA"), Wash. Rev. Code § 7.72.010, *et seq.* Like Ohio's product liability statute, the WPLA preempts common law product liability remedies. *Washington Water Power Co. v. Graybar Elec. Co.*, 774 P.2d 1199, 1207 (Wash. 1989) ("[T]he WPLA creates a single cause of action for product-related harms that supplants previously existing common law remedies."). A WPLA "product liability claim" includes any claim previously based on negligence. Wash. Rev. Code § 7.72.010(4). If a plaintiff brings product liability claims under both the WPLA and a common

law negligence theory, the "the negligence theory is subsumed under the WPLA product liability claim." *Macias v. Saberhagen Holdings, Inc.*, 282 P.3d 1069, 1074 (Wash. 2012).  Although differences certainly exist between Minnesota and Washington law, the parties, like the parties in *Cline,* failed to demonstrate how those differences will affect the outcome based on the facts presented by the present record.  Accordingly, the Court is skeptical that an outcome determinative difference exists.  Nevertheless, given that Morey did not challenge Mentor's argument that an outcome determinative difference exists, the Court assumes that such a difference does exist for purposes of this Order and moves to the next step of the choice of law analysis.

    B.   <u>Can Minnesota Law Be Constitutionally Applied?</u>

The next question is whether the law of each state can be constitutionally applied.  It is undisputed that the law of Ohio can be constitutionally applied to Cline's claim and that the law of Washington can be constitutionally applied to Morey's claim.  Mentor contends, however, that Minnesota law cannot be constitutionally applied.  For Minnesota's law to be selected in a constitutionally permissible manner, Minnesota "must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Jepson*, 513 N.W.2d at 469.

In support of its argument that Minnesota law cannot be constitutionally applied here, Mentor cites an unreported federal district court case, *Newman v. Stryker Sales Corp.*, Civ. No. 09-2866 (JRT/JJK), 2010 WL 3926200 (D. Minn. Sept. 30, 2010). In *Newman,* the plaintiff was an Ohio resident who was implanted with the defendant's product in Ohio. *Id.* at *1. The defendant was a Michigan corporation whose only contact with Minnesota was that it conducted business unrelated to the plaintiff there. *Id.* When the defendant argued that it would be arbitrary and fundamentally unfair to apply Minnesota law under these circumstances, the plaintiff did not oppose that assertion. *Id.* at *10. Therefore, the court found that Minnesota law could not be constitutionally applied. *Id.*

*Newman* is readily distinguishable from the facts in this action. Here, Mentor's significant contacts with Minnesota at the time of the events giving rise to both Cline's and Morey's actions are sufficient to render application of Minnesota law constitutionally permissible. It is undisputed that "Mentor Corporation" was incorporated in Minnesota until 2009. As discussed above, it is also undisputed that Mentor completed several key manufacturing tasks in Minnesota, including ObTape quality control, and that Mentor represented to the FDA that ObTape was manufactured by Mentor in Minnesota. It is further undisputed that Mentor's Minnesota employees were responsible

for evaluating any complaints regarding ObTape and for making adverse consequences reports to the FDA.   Mentor's Minnesota employees were also responsible for training sales representatives regarding adverse events.   Finally, it is undisputed that any explanted ObTape was to be sent to Mentor in Minnesota for analysis and that complications associated with ObTape were subject to investigation at Mentor's Minnesota facilities.   Thus, when Mentor marketed ObTape to Plaintiffs' physicians and provided warnings about the product, Mentor was a Minnesota company.   When ObTape was manufactured, quality controlled, distributed, and implanted into Plaintiffs' bodies, Mentor was a Minnesota company.   And when Plaintiffs experienced complications with ObTape and the ObTape had to be explanted, Mentor was a Minnesota company.   Accordingly, it is constitutionally permissible for Minnesota law to be applied to Plaintiffs' claims.   *See Jepson*, 513 N.W.2d at 470 (finding that Minnesota law could constitutionally be applied to dispute regarding application of a North Dakota insurance policy to a car accident that occurred in Arizona because of the plaintiff's sufficient contacts with Minnesota).

    C.   Choice-Influencing Factors

      Having assumed for purposes of this Order that there is an actual conflict between Minnesota law and the law of Ohio and Washington and having found no constitutional impediment to the

application of the law of any of these states to the respective claims, the Court next evaluates the five choice influencing factors employed by the Minnesota courts: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Id.*

### 1. Predictability of Result

"This factor addresses whether the choice of law was predictable *before* the time of the transaction or event giving rise to the cause of action." *Schumacher v. Schumacher*, 676 N.W.2d 685, 690 (Minn. Ct. App. 2004). This factor is not usually considered in tort cases because many tort cases, such as car accident cases, result from accidental encounters and not consensual transactions. *Nodak Mut. Ins. Co.*, 604 N.W.2d at 94. Neither Plaintiff's action resulted from an accidental encounter; Plaintiffs (or their surgeons) intentionally selected Mentor's product to treat their symptoms. "Applying Minnesota law to product-liability cases involving a Minnesota manufacturer enables the manufacturer . . . to know the rules that will govern [its] transactions." *Kolberg-Pioneer, Inc. v. Belgrade Steel Tank*, 823 N.W.2d 669, 673 (Minn. Ct. App. 2012) (finding that predictability of results favored application of Minnesota law in an action by a seller against a Minnesota

14

manufacturer for indemnity related to a product failure that occurred in Montana). Mentor cannot seriously dispute that it was reasonably aware that its connection to Minnesota at the time Cline and Morey were implanted with its product would authorize the application of Minnesota substantive law to a claim brought in the state of Minnesota. The Court finds that the first factor weighs in favor of applying Minnesota law.

       *2.   Maintenance of Interstate and International Order*

In evaluating this factor, the courts "are primarily concerned with whether the application of Minnesota law would manifest disrespect for [another state]'s sovereignty or impede the interstate movement of people and goods. *Jepson*, 513 N.W.2d at 471. "An aspect of this concern is to maintain a coherent legal system in which the courts of different states strive to sustain, rather than subvert, each other's interests in areas where their own interests are less strong." *Id.*

Here, both Cline and Morey's claims have genuine contacts with Minnesota because their ObTape was manufactured and sold by Mentor while Mentor was a Minnesota corporation. Even though they received ObTape in their home states and allegedly suffered injury there, the Court cannot find that application of the law of the state where the product was manufactured in an action filed in that state would thwart the legitimate interest of any other state in having its law applied to such an action,

15

particularly when the plaintiff voluntarily files her claim in Minnesota and rejects any protections that may be available to her under the law of her home state.   Therefore, the Court concludes that this second factor does not weigh in favor of applying Ohio law to Cline's claim or Washington law to Morey's claim.

### 3.   Simplification of the Judicial Task

The Court finds that the judicial task is not complicated by the application of either state's law.   This third factor is neutral.

### 4.   Advancement of the Forum's Governmental Interest

"The fourth choice influencing factor is which choice of law most advances a significant interest of the forum." *Jepson*, 513 N.W.2d at 472.   "This factor is designed to ensure that Minnesota courts do not have to apply rules of law that are inconsistent with Minnesota's concept of fairness and equity." *Schumacher*, 676 N.W.2d at 691 (internal quotation marks omitted).   "In considering which law will advance the governmental interest of Minnesota," the Court must consider "the public policy of both forums." *Id.*

Minnesota has "weighty interest in compensating tort victims" and also "a clearly expressed public policy in holding a product's maker responsible for the costs of a defective product." *Kolberg-Pioneer, Inc.*, 823 N.W.2d at 675.   In

16

enacting their product liability statutes, both Ohio and Washington, like Minnesota, expressed an interest in vindicating the rights of those who have been legitimately harmed by a defective product. Even though Ohio and Washington may take a different approach than Minnesota, the Court cannot find based on the present record that Minnesota law is in conflict with the public policy underlying the Ohio and Washington product liability statutes. The Court finds that the fourth factor favors application of the law of the forum in which the actions were filed—Minnesota.

     5. *Application of the Better Rule of Law*

The fifth and final choice influencing factor "is whether, in an objective sense, [Ohio/Washington] or Minnesota has the better rule of law." *Jepson*, 513 N.W.2d at 472. In general, "this factor is addressed only when the other four factors are not dispositive as to which state's law should be applied." *Schumacher*, 676 N.W.2d at 691-92. Mentor appears to misunderstand this factor and argues that the better rule of law is applying the law of Plaintiffs' home states to their claims. The factor, however, is intended to inquire into which state's substantive law provides the better rule. *Jepson*, 513 N.W.2d at 473. Here, the relevant question is whether it is better to have remedies available only within the framework of a product liability statute or to permit common law claims in product

liability cases.  Neither party offers a compelling explanation of which approach is the better rule.  "Sometimes different laws are neither better nor worse in an objective way, just different."  *Id.*  For these reasons, the Court concludes that the final factor is neutral.

### 6.   Summary of Choice Influencing Factors

The Court finds that an evaluation of the influencing factors establishes that Cline's claim, Morey's claim, and Mentor's activities have sufficiently significant contacts with the forum state to support the application of Minnesota law. Accordingly, Mentor's summary judgment motion against Cline (ECF No. 58 in 4:10-cv-5060) is denied, and Cline's claims are not subject to dismissal.  Similarly, Mentor's summary judgment motion against Morey (ECF No. 51 in 4:11-cv-5065) is denied.

## V.   Morey's Motion to Amend

As the Court previously noted, Morey seeks to add a claim for punitive damages.  Mentor's only argument in opposition to Morey's proposed amendment is that Morey's claim is time-barred under Washington law.[1]  The Court has concluded that Minnesota law, not Washington law, applies.  Mentor did not argue that

---

[1] Under Minnesota's borrowing statute, Washington's three-year statute of limitations applies to claims based on *Washington* substantive law. Minn. Stat. § 541.31 subdiv. 1(a)(1); Wash. Rev. Code. § 7.72.060(3). But here, the Court has concluded that *Minnesota* substantive law applies to Morey's claims, so Minnesota's six-year statute of limitations applies.  Minn. Stat. § 541.31 subdiv. 1(b); *id.* § 541.05 subdiv. 1(5).  Morey's claims are timely under Minnesota law.

Morey's proposed punitive damages claim is time-barred under Minnesota law, and Mentor did not advance any other argument in opposition to Morey's proposed amendment.  Therefore, the Court grants Morey's Motion to Amend (ECF No. 36 in 4:11-cv-5065). Morey shall file her amendment to her complaint within 7 days of today's order.

CONCLUSION

As discussed above, the Court finds that Minnesota law should be applied to the claims of Cline and Morey.  The Court therefore denies Mentor's Motion for Summary Judgment against Cline (ECF No. 58 in 4:10-cv-5060) and Mentor's Motion for Summary Judgment against Morey (ECF No. 51 in 4:11-cv-5065). The Court grants Morey's Motion to Amend (ECF No. 36 in 4:11-cv-5065).

IT IS SO ORDERED, this 24th day of January, 2013.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE